IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BARRY A. CHATZ, Chapter 7 Trustee )
of the Estate of Nanovation Technologies, )
Inc., et al., )
 )
       Appellants, )
 )
       v. ) No. 06 C 6140
 )
NATIONAL UNION FIRE INSURANCE )
COMPANY OF PITTSBURGH, PA, )
et. Al., )
 )
       Appellees. )

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

    This matter is before the court on an appeal from a bankruptcy court ruling on July 27, 2006. For the reasons stated below, we affirm in part and reverse in part and remand the instant action.

## BACKGROUND

    The basic underlying facts in this matter are undisputed by the parties. Nanovation Technologies, Inc. and its related corporation Nanovation Technologies of Michigan, Inc. (collectively referred to as "Nanovation") purchased insurance policies ("D&O Policies") from Appellee National Union Fire Insurance Company of Pittsburgh, PA, ("National"), Appellee Federal Insurance Company ("Federal"),

and Appellee Twin City Fire Insurance Company ("Twin City") (collectively referred to as "Insurers"). National issued the primary policy ("Primary Policy") and Federal and Twin City issued excess policies that provided the same scope of coverage as the primary policy and which stated that the policies would apply in conformance with the terms of the Primary Policy. The D&O Policies provided coverage for suits brought against Nanovation's directors and officers relating to misconduct in their operation of Nanovation. Section 7 of the Primary Policy ("Section 7") included the following provision:

> (c) If during the Policy Period or during the Discovery Period (if applicable) the Company or the Insureds shall become aware of any circumstances which may reasonably be expected to give rise to a Claim being made against the Insureds and shall give written notice to the Insurer of the circumstances and the reasons for anticipating such a Claim, with full particulars as to the dates, persons and entities involved, then any Claim which is subsequently made against the Insureds and reported to the Insurer alleging, arising out of, based on or attributable to such circumstances or alleging any Related Wrongful Act to such circumstances, shall be considered made at the time such notice of such circumstances was given.

(ID. Ex. 3).

On July 23, 2001, Nanovation's Vice President of Finance, John Ofenloch ("Ofenloch"), sent a letter ("Ofenloch Letter") to Nanovation's insurance broker, Dennis E. Love ("Love") of Marsh USA, Inc. In the letter, Ofenloch stated the following:

> Pursuant to Section 7 of the [full title of policy] we are putting you on notice of potential claims against the Company. The Company is contemplating the filing of a Chapter 11 bankruptcy petition and believe that such filing will give rise to claims being filed against the Company, its Board and Officers. We will advise you of the specifics of the claims as the Company becomes aware of them. If you have any questions, please contact me at 734-351 0691.

(Letter 1). Two days later, on July 25, 2001, Nanovation filed voluntary petitions under Chapter 11 of the United States Bankruptcy Code. On that same day, the Ofenloch Letter was forwarded by Love to National, Federal, and Twin City, along with a letter from Love, requesting that the Insurers accept the letter as a notice of circumstances required under Section 7. (N. Ans. 2); (F. Ans. 4); (T. Ans. 3). On August 10, 2001, Federal mailed to Nanovation a letter that Federal contends served as a reservation of rights letter in compliance with Section 7. Appellants contend that the letter does not suffice to meet the Section 7 requirements and that National and Twin City waited for a long period of time to inform Nanovation that the Ofenloch Letter was not sufficient to satisfy Section 7 so that Nanovation would be unable to provide notice in compliance with Section 7.

On November 20, 2001, the bankruptcy court converted Nanovation's Chapter 11 cases into cases under Chapter 7 of the Bankruptcy Code and appointed Barry A. Chatz ("Chatz") as the Chapter 7 Trustee. On May 7, 2002, Chatz filed an adversary action against certain former officers and directors of Nanovation alleging that they had breached their fiduciary duties and violated Florida state law and federal law. The officers and directors filed claims for coverage with the Insurers despite the fact that the D&O Policies' coverage period had expired. The directors and officers contended that the Ofenloch Letter, which was forwarded to the Insurers during the D&O Policies' coverage period, met the requirements for a notice of circumstances under Section 7 and that Section 7 therefore allowed their claims to be "considered made at the time such notice of such circumstances was given." (Ex.1). The

Insurers, however, refused to accept the Ofenloch Letter as a proper notice of circumstances under Section 7 and the Insurers denied coverage because they believed that no claim was made during the policy period. (N. Ans. 2); (F. Ans. 5-6); (T. Ans. 5).

On October 29, 2002, Chatz filed the adversary action ("Adversary Proceeding") against the Insurers that is the subject of the instant appeal. Certain former directors and officers of Nanovation, such as Stephen Barney, Dr. Gary Bjorklund, Joseph S. Carr, Daniel Dorman, David Grubb, Howard Gitten, and James D. Davidson (collectively referred to as "Directors and Officers") also intervened in the Adversary Proceeding and filed a third-party complaint against the Insurers. In the Adversary Proceeding, Chatz sought relief such as a declaration that the D&O Policies provide coverage for the claims brought against the Directors and Officers and a declaration that the Insurers are precluded from denying coverage.

The parties filed cross motions for summary judgment in the Adversary Proceeding and on July 27, 2006, the bankruptcy court granted the Insurers' motions for summary judgment and denied Chatz's and Directors and Officers' motions for summary judgment. On October 19, 2006, the bankruptcy court denied a motion for reconsideration. Chatz and the Directors and Officers appealed the bankruptcy court's July 27, 2006 ruling. (Case numbers, 06 C 6138, 06 C 6140, 06 C 6374, 06 C 6376). On December 15, 2006, we consolidated all four appeals. Chatz and former Director James D. Davison ("Davidson") have each filed an individual appellant brief. Former Directors and Officers Stephen Barney, Dr. Gary Bjorklund, Joseph S. Carr, Daniel Dorman, David Grubb, and Howard Gitten (collectively

referred to as "Individual Directors and Officers") have filed a combined appellant brief.

## LEGAL STANDARD

A federal district court has jurisdiction, pursuant to 28 U.S.C. § 158, to hear appeals from the rulings of a bankruptcy court. On appeal, the district court reviews the factual findings of the bankruptcy court under the clearly erroneous standard and reviews the bankruptcy court's legal findings under the *de novo* standard. *In re A-1 Paving and Contracting, Inc.,* 116 F.3d 242, 243 (7th Cir. 1997).

## DISCUSSION

Appellants argue that the bankruptcy court erred in concluding that the Ofenloch Letter did not satisfy the notice of circumstances requirements in Section 7. The Appellees also argue that the bankruptcy court erred in concluding that Fla. Stat. § 627.426(2)(a) ("Florida Notice Statute") did not apply to the Adversary Proceeding and concluding that the court did not need to engage in a choice of law analysis since there is no conflict between Illinois and Florida law. Appellees, on the other hand, argue that Chatz and the Individual Directors and Officers waived their right to argue on appeal that the bankruptcy court should have considered Florida law. The Appellants and Appellees present many other arguments as well, however, the above-mentioned issues are determinative for the purposes of the appeal and many of the other arguments are premature at this juncture in light of the limited record on appeal and the limited scope of the bankruptcy court's analysis. We have considered

all the issues presented by Appellants on appeal. (ID. AB. 2); (C. AB. 1); (D. AB. 1).

I. Whether Ofenloch Letter Satisfied Section 7 Requirements

Appellants argue that the bankruptcy court erred in concluding that the Ofenloch Letter did not satisfy the notice of circumstances requirements in Section 7. The bankruptcy court held that the Ofenloch Letter did not meet the requirements in Section 7, and thus, "did not constitute sufficient notice of circumstances to trigger coverage under the policies." (7/27/06 OP 28). Appellants contend that the bankruptcy court erred by appending stricter requirements for the notice of circumstances provision in Section 7. Appellants specifically take issue with the bankruptcy court's statement that "the letter provides absolutely no specific facts about any actions taken by those directors and officers. . . ." (7/27/06 OP 28); (C. AB. 9). Appellants argue that Section 7 does not specifically require any statement regarding the wrongful conduct of Nanovation's directors and officers. We need not determine if the bankruptcy court erred in requiring facts relating to the wrongful misconduct in the notice because, regardless, the bankruptcy court properly concluded that the Ofenloch Letter did not meet the requirements of Section 7.

As is indicated above, Section 7 required Nanovation to "give written notice to the Insurer of the circumstances and the reasons for anticipating such a Claim, with full particulars as to the *dates, persons and entities involved. . . .*" (ID. Ex. 3)(emphasis added). Ofenloch stated in his letter only that Nanovation was contemplating filing for bankruptcy and that claims might then be brought against its

directors and officers.

### A. Permissive Requirements of Section 7

Appellants contend that this court should liberally construe Section 7 as requiring only "bare-bones" information and to contain "permissive requirements" and cite in support to a series of treatises regarding insurance law. (ID. AB. 7-9). However, such non-controlling authority is not sufficient to allow Appellants to overlook the express and unambiguous terms included in Section 7 that indicate the permissive view proposed by Appellants was not contemplated by the parties when entering into the D&O Policies. Appellants avoid analyzing the specific terms of Section 7 and instead argue that the legal treatises cited by them provide that Section 7 would be deemed to have "permissive requirements." (ID. AP. 8-9). Appellees also argue that despite any specific language in Section 7, the treatises cited by Appellees show that Section 7 was merely intended to require information necessary to "spark an investigation by the insurers and a request for additional information if they deemed it necessary." (ID. Ap. 9). The express requirement in Section 7 that information be provided "with full particulars" makes it clear that Nanovation could not satisfy the notice requirement with vague and general catchall statements about possible claims as Appellants now propose. In addition, we note that Ofenloch himself acknowledged in his letter that he lacked knowledge concerning the specific facts involved in the potential claims, stating: "We will advise you of the specifics of the claims as the Company becomes aware of them." (Letter 1).

B.  Dates

In regards to the dates of possible claims, the Ofenloch Letter does not provide any specific dates, or even anticipated dates or possible time periods.  Rather, the letter simply provides that Novation was "contemplating the filing of a Chapter 11 bankruptcy petition. . . ."  (Letter 1).  Thus, the Ofenloch Letter did not comply with the Section 7 requirement to provide "full particulars" as to the dates involved in the claims.  (ID. Ex. 3).

C.  Persons

In regards to the persons involved in possible future claims, the Ofenloch Letter only mentions that claims might be filed against Nanovation's "Board and Officers."  (Letter 1).  Appellees point out and the bankruptcy court correctly found that such information is clearly not the information intended to be covered under Section 7.  (7/27/06 OP 27); (F. Ans. 11).  Obviously, any claim that would be covered by the D&O Policies would be brought against Nanovation's directors and officers who were individuals covered under the D&O Policies.  Thus, informing the Insurers that claims had been brought against Nanovation's directors and officers would not provide any meaningful information to the Insurers.  The Ofenloch Letter failed to even specify which particular directors or officers would be the subject of claims or the claimants involved, or any other parties involved in the claims. Clearly, Section 7 contemplates some useful information regarding persons involved in the claims and the Ofenloch Letter reference to possible claims against Nanovation's "Directors and Board" provided the Insurers with a fact that was self

evident. Appellants contend that the bankruptcy court erred by concluding that Section 7 required Nanovation to list all claimants that would file claims. We do not hold that such specific facts are required, but it is clear that the minimal information provided in the Ofenloch Letter failed to provide any meaningful information concerning persons involved in claims. Thus, the Ofenloch Letter did not comply with the Section 7 requirement to provide "full particulars" regarding "persons" involved in the claims.

D. Entities Involved

In regards to the entities involved in the claims, the Ofenloch Letter only mentioned that Nanovation might file for bankruptcy. As with the persons requirement, it would be self evident that any claim brought against Nanovation's directors or officers in regards to their operation of Nanovation would involve Nanovation. The Ofenloch Letter is silent as to any other entities that Ofenloch anticipated might bring claims or would be involved in the claims brought against Nanovation. Thus, the Ofenloch Letter did not comply with the Section 7 requirement to provide "full particulars" regarding "entities involved" in the claims. (ID. Ex. 3). Based on the above, it is clear that the bankruptcy court did not err in concluding as a matter of law that the Ofenloch Letter did not satisfy the notice requirements of Section 7 and granting Appellees' motion for summary judgment on that issue. Appellants are correct in their assertion that the Insurers need to show prejudice. *Tiedtke v. Fidelity & Cas. Co. of New York*, 222 So.2d 206, 209 (Fla. 1969).

II. Florida Notice Statute

Appellants argue that the bankruptcy court erred in concluding that the Florida Notice Statute did not apply in this case and in concluding that the court did not need to conduct a choice of law analysis since Illinois law did not conflict with Florida law. The Florida Notice Statute provides the following:

> (2) A liability insurer shall not be permitted to deny coverage based on a particular coverage defense unless:
> (a) Within 30 days after the liability insurer knew or should have known of the coverage defense, written notice of reservation of rights to assert a coverage defense is given to the named insured by registered or certified mail sent to the last known address of the insured or by hand delivery; . . . .

Fla. Stat. § 627.426(2)(a). The bankruptcy court held that the Florida Notice Statute did not apply to the Adversary Proceeding because the Insurers were not asserting a coverage defense and the statute only covered situations when an insurer asserts a coverage defense. (7/27/06 OP 21-23). Appellants contend that the bankruptcy court needed to engage in a choice of law analysis since the Florida Notice Statute provided requirements not present in Illinois law and thus conflicted with Illinois law. However, the bankruptcy court concluded that since the Florida Notice Statute did not apply, "no conflict exists between Illinois and Florida law" and that there was thus "no need to engage in a choice of law analysis. . . ." (7/27/06 OP 23); *See Sphere Drake Ins. Ltd. v. American General Life Ins. Co.*, 376 F.3d 664, 671 (7th Cir. 2004)(indicating that if there is no conflict between the results under each of the proposed bodies of state law the court is not required to engage in a choice of law analysis). Appellees also argue that, regardless of the bankruptcy court's rulings, Chatz and Davidson waived their arguments concerning Florida law by failing to

raise the issue before the bankruptcy court.

### A. Waiver of Arguments

Appellees argue that Chatz and Davidson have waived any right to make arguments concerning Florida law. (N. Ans. 7); (F. Ans. 8); (T. Ans. 8 n.3). Appellees do not argue that the Individual Directors and Officers waived such a right. (N. Ans. 7); (F. Ans. 8); (T. Ans. 8 n.3). Arguments that are not presented to a lower court "are waived and cannot be raised for the first time on appeal." *In re Kroner*, 953 F.2d 317, 319 (7th Cir. 1992).

In the instant action, Appellees contend that Chatz and Davidson took a position that Illinois law applied in this action because they cited Illinois law in response to a motion to dismiss and a motion to compel. Chatz points out that the citation relied upon by Appellees was a single citation that was included in a response to a motion to dismiss over three years ago. (C. Reply 4). Chatz argues that the proper choice of law was never an issue that has arisen before in this action in regards to any coverage issues in this case and that Chatz has "consistently maintained following the deposition of John Ofenloch that Florida law applies to each issue." (C. Reply 4). Appellees have not shown either assertion to be untrue. Davidson likewise contends that his reference to Illinois law was made early in the Adversary Proceeding and that there was no need at that juncture to address the choice of law issue. Appellees have also failed to show Davidson's assertion to be untrue. We agree that Appellees' waiver argument lacks merit and that neither Chatz nor Davidson reasonably should have raised the choice of law issue earlier in the

Adversary Proceeding or that such arguments are waived on appeal.

### B. Applicability of Florida Notice Statute

The bankruptcy court held that the Florida Notice Statute did not apply in the Adversary Proceeding because it only applied to coverage defenses and the Insurers did not assert a coverage defense. As is indicated above, the Florida Notice Statute requires notice "[w]ithin 30 days after the liability insurer knew or should have known of the coverage defense." Fla. Stat. § 627.426(2)(a). The bankruptcy court concluded that the Insurers did not assert a coverage defense based in part upon *AIU Ins. Co. v. Block Marina Inv., Inc.*, 544 So.2d 998, 999 (Fla. 1989), *Country Manors Ass'n, Inc. v. Master Antenna Systems, Inc.*, 534 So.2d 1187, 1190 (Fla. Dist. Ct. App. 1988), and *Aguilar v. Royal Surplus Lines Ins. Co.*, 2006 WL 2038643, at *1 (Bankr. S.D. Fla. 2006). (7/27/06 OP 21-23); (10/19/06 OP 5-6).

The Court in *AIU* held that "the term 'coverage defense,' as used in section 627.426(c), means a defense to coverage that otherwise exists," and that the term does not "include a disclaimer of liability based on a complete lack of coverage for the loss sustained." 544 So.2d at 1000. In the instant action, the Insurers have taken the position that the Ofenloch Letter was not sufficient to satisfy the notice requirement in Section 7. Such a position is unquestionably a coverage defense. Insurers' position is that, although Nanovation attempted to provide notice pursuant to Section 7, which would enable later claims to relate back to the date of the Ofenloch Letter, Nanovation did not comply with all of the requirements of Section 7. That alleged failure to comply with the precise requirements of Section 7 is a

basis that Insurers contend provides a justification to deny coverage over a matter that is covered under the D&O Policies.

The undisputed facts in this case do not show that the Ofenloch Letter involved matters that were outside the scope of the D&O Policies and were never covered. If, for example, the Ofenloch Letter had merely asserted that claims might be brought against independent contractors that work for Nanovation, Insurers could assert that coverage for such individuals never existed under the D&O Policies, which would not be a coverage defense. Under the facts before us, it is undisputed that if Nanovation had followed the notice requirements of Section 7, it is at least possible that the D&O Policies would provide coverage. Although the facts before us indicate that the D&O Policies cover the claims, the bankruptcy court never reached that issue and we need not delve into that issue to resolve the appeal before us. The fact that it was possible that the D&O Policies would have applied to the claims brought against the Directors and Officers and that the basis for denial rested upon failing to follow the necessary steps in Section 7 is sufficient to warrant a finding in favor of Appellants on this issue. Thus, it is clear that the Insurers have asserted a coverage defense against the Directors and Officers and the Florida Notice Statute is applicable to the Adversary Proceeding.

The bankruptcy court provided certain legal support, as indicated above, for its conclusion that non-compliance with a notice provision is not a coverage defense under Florida law. In *AIU* the court noted that a "breach of a condition" of a policy would constitute a coverage defense. 544 So.2d at 1000. Similarly, in the instant action, the failure by Nanovation to follow all of the requirements of Section 7 can

best be characterized as a breach of a condition in the D&O policies. In *Country Manors Ass'n, Inc. v. Master Antenna Systems, Inc.*, 534 So.2d 1187 (Fla. Dist. Ct. App. 1988), the court held that the Florida Notice Statute did not apply to a claim relating to treble damages because such damages were excluded from the policy coverage. *Id.* at 1195-96. *Country Mannors* is distinguishable from the instant action because in that case the facts involved included matters that were not covered under the pertinent policies, whereas in the instant action we are faced with facts that could be covered under the D&O Policies.

In *Aguilar v. Royal Surplus Lines Ins. Co.*, 2006 WL 2038643 (Bankr. S.D. Fla. 2006) the policy in question required the insured to provide notice of claims within a specified period. *Id.* at *4-*5. The court held that in order to meet a notice requirement in the policy the insured had to report a claim made against him. *Id.* The Insured in *Aguilar* provided notice of only potential claims. *Id.* Thus, *Aguilar* dealt with a policy that is distinguishable from the instant action, which provides for notice of "circumstances which may reasonably be expected to give rise to a Claim. . . ." (ID. Ex. 3). In *Aguilar* the insured attempted to assert a claim relating to a potential claim that was not covered under the pertinent policy, whereas in the instant action, Nanovation simply failed to provide all the necessary information in the notice as is required by Section 7.

Appellees also make various arguments based upon their contention that Section 7 is a "claims-made policy," meaning a requirement that an insured present any claims filed against the insured within the policy period, as opposed to an "occurrence" policy, meaning a requirement that the insured provide notice of any

occurrences during the policy period that might give rise to a claim. (F. Ans. 10-11); (N. Ans. 13); (T. Ans. 14). However, Appellees cannot ignore the facts in this case and impose rigid concepts of "claims-made" policies and "occurrence" polices and conclude that merely because a court held in some fashion towards one type of policy, a similar result must occur in the instant action. The Insurers and Nanovation chose to enter into the D&O agreement with the specific language included in Section 7. The Insurers and Nanovation chose not to provide terms in Section 7 that rigidly fit within the description of a "claims-made" policy or an "occurrence" policy and Section 7 is properly characterized by Appellants as a "hybrid claims-made policy. (ID. AB. 5).

Federal and Twin City also argue that the Florida Notice Statute does not apply to excess insurers and cite in support *Pepper's Steel & Alloys, Inc. v. U.S. Fidelity and Guar. Co.*, 668 F.Supp. 1541, 1544 (S.D. Fla. 1987). (F. Ans. 17); (T. Ans. 15). The holding in *Pepper's* is not controlling and the court in *Pepper's* even noted that the opposing party in that case did not dispute that issue in the case. *Id.* Also, the conclusion that excess insurers are not covered by the Florida Notice Statute is contrary to the plain language of the statute that states that it applies to a "liability insurer." Fla. Stat. § 627.426(2)(a). As excess insurers, Federal and Twin City acknowledge that they are insurers and that they insured Nanovation against liability. Thus, excess insurers would clearly be covered under the Florida Notice Statute. We note that Federal also incorrectly states that the bankruptcy court "correctly concluded that § 627.426 does not apply to . . . excess insurers." (F. Ans. 14). In fact, the bankruptcy court never made such a finding since the court never

reached the issue after concluding that the Florida Notice Statute was not applicable at all to the Adversary Proceeding. (7/27/06 OP 21-23). Therefore, based on the undisputed facts in this case, the bankruptcy court erred in concluding that the Insurers were not asserting a coverage defense and erred in concluding that the Florida Notice Statute did not apply to the Adversary Proceeding.

### C. Choice of Law Analysis

The bankruptcy court concluded that there was no conflict between Illinois law and Florida law based upon its conclusion that the Florida Notice Statute did not apply to the Adversary Proceeding, and based upon the lack of a perceived conflict, the court chose not to engage in a choice of law analysis. However, since the conclusion concerning the applicability of the Florida Notice Statute was in error, the bankruptcy court also erred in failing to engage in a choice of law analysis. Although Appellants present cursory arguments regarding the proper choice of law, the parties have not presented sufficient arguments or evidence in the record to address the issue and at this juncture it would be improper to engage in such an analysis on a subject not yet fully developed before the bankruptcy court.

Once the bankruptcy court resolves the choice of law issues, it will then need to apply the appropriate law to issues that have been presented on appeal such as whether the Insurers acted in bad faith and whether Nanovation should be estopped from denying coverage due to conduct relating to a separate policy. To the extent that the bankruptcy court articulated that it applied Illinois law to the estoppel issue, the bankruptcy court was correct in its conclusion that under Illinois law appellants

could not prevail as a matter of law.  Appellants argued that Nanovation relied upon Insurers' conduct relating to a separate and unrelated policy that covered a different type of risk.  The bankruptcy court correctly concluded, under Illinois law, that there was not sufficient evidence for a reasonable trier of fact to conclude that Nanovation could have reasonably relied upon the Insurers' actions that related to a policy that was entirely separate from the D&O Policies.

III.  Remaining Issues

Our conclusion that the Florida Notice Statute applies to the Adversary Proceeding creates a need for certain follow-up analysis by the bankruptcy court on remand.  Under the Florida Notice Statute, if the Insurers violated the statute then they would be precluded from asserting the coverage defense that the Directors and Officials filed claims after the expiration of the D&O Policies' coverage period.  We cannot resolve this issue at this juncture since the bankruptcy court never reached the issue.  There are also various arguments presented in the appellate briefs to be addressed by the bankruptcy court concerning matters such as whether Federal sent a reservation of rights letter that complied with the Florida Notice Statute and issues concerning bad faith.  The bankruptcy court found in the Insurers' favor based on the technicality that the Directors and Officers filed claims after the end of the D&O Policies policy period.   Since the bankruptcy court, because of its earlier ruling, did not make a determination whether or not the D&O Policies provide coverage for the Directors and Officers, and never resolved the underlying coverage issues, it will need to address those issues on remand consistent with our opinion.  Therefore, we

affirm in part and reverse in part and remand the instant action for proceedings consistent with this opinion.

## CONCLUSION

Based on the foregoing analysis, we affirm in part and reverse in part and remand the instant action for proceedings consistent with this opinion.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated:    April 12, 2007